UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x
ROBERT LAROSE,                                  :
                                                :
                Plaintiff,      :    **MEMORANDUM &**
                                                :    **ORDER GRANTING**
    -against-                                  :    **DEFENDANT'S MOTION**
                                                :    **FOR SUMMARY**
AMERICAN MEDICAL RESPONSE OF                    :    **JUDGMENT**
CONNECTICUT, INC.,                              :
                                                :    3:21-CV-00948 (VDO)
                Defendant.      x
-------------------------------------------------------------

**VERNON D. OLIVER**, United States District Judge:

In this employment action, Plaintiff Robert LaRose alleges that his former employer, American Medical Response of Connecticut, Inc. ("AMR" or "Defendant"), discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and interfered with his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Defendant seeks summary judgment with respect to both claims.

For the reasons set forth below, the defendant's motion for summary judgment is **GRANTED**.

**I.     BACKGROUND**

      **A.     Factual Background**

The following facts are taken from Defendant's Local Rule 56(a)1 Statement of Undisputed Material Facts ("Def.'s 56(a)," ECF No. 37), Plaintiff's Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment ("Pl.'s 56(a)," ECF No. 45-1), and the record. The facts are recounted "in the light most favorable to" Plaintiff, the non-movant.

*Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 345 (2d Cir. 2021). The facts as described below are in dispute only to the extent indicated.[1]

Plaintiff was hired by AMR as a part-time paramedic in April 2006, and became a full-time paramedic in June 2006. (Def.'s 56(a) ¶¶ 2, 3, 4.) Plaintiff's supervisors at AMR were Mark Hughson, Senior Operations Supervisor, and Robert Retallick, General Manager. (*Id.* ¶ 5.) After applying for a Field Supervisor position in August 2011, Plaintiff assumed the position of Operations Supervisor on July 26, 2012. (*Id.* ¶¶ 18, 19.) He became Senior Operations Supervisor in February 2016. (*Id.* ¶ 21.)

### 1. Plaintiff's Leaves of Absence

In 2010, Plaintiff took leave approved under the FMLA to take care of a sick son, and received all leave to which he was entitled under the FMLA. (*Id.* ¶¶ 22, 25.) Plaintiff began experiencing pain in his neck and tingling in his arm and hand in or around August 2018. (Compl., ECF No. 1, ¶ 14.) Plaintiff was diagnosed with a herniated desk and took a second leave of absence approved under the FMLA from October 16, 2018 to January 6, 2019, which amounted to a total of twelve weeks, for surgery on his neck. (Def.'s 56(a) ¶ 27; Compl. ¶¶ 14,

---

[1] Where the parties "identify disputed facts but with semantic objections only or by asserting irrelevant facts . . . which do not actually challenge the factual substance described in the relevant paragraphs, the Court will not consider them as creating disputes of fact." *N.J. v. N.Y.C. Dep't of Educ.*, No. 18-CV-6173, 2021 WL 965323, at *2 n.1 (S.D.N.Y. Mar. 15, 2021); *see also Scanlon v. Town of Greenwich*, 605 F. Supp. 3d 344, 351 (D. Conn. 2022) (finding that plaintiff's 56(a)2 Statement "improperly interjects arguments and/or immaterial facts in response to facts asserted by Defendant, without specifically controverting those facts"); *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (deeming admitted Rule 56(a)1 Statements where plaintiff responded with conclusory allegations, speculation, conjecture or legal arguments).

Where possible, the Court has relied on the undisputed facts in the parties' 56(a) submissions. However, direct citations to the record have also been used where relevant facts were not included in any of the parties' statements of material facts, or where the parties did not accurately characterize the record.

15.) Following his leave, Plaintiff returned to his position as Senior Operations Supervisor and resumed his regular duties. (Def.'s 56(a) ¶ 30; Pl. Dep., ECF No. 38-1, at 44:7-18.) Twelve days later, on January 18, 2019, Plaintiff began a third leave after falling on ice and hurting his left shoulder. (Def.'s 56(a) ¶¶ 31, 32.) Plaintiff received all leave to which he entitled under the FMLA and exhausted all protected leave on February 15, 2019, at which point he was authorized to take an extended leave of absence beyond February 15, 2019 pursuant to AMR policy. (*Id.* ¶ 34.) Plaintiff was advised by his treater to remain out of work until February 25, 2019. (Pl.'s 56(a) ¶ 27.) However, Plaintiff was scheduled to have shoulder surgery on March 4, 2019 and would not be able to return to work for at least two to three months. (ECF No. 38-2 at 3, 5.)

        **2.**    **Plaintiff's Return to AMR and Termination**

After Plaintiff had exhausted his protected leave, he received a letter from Retallick on February 22, 2019 stating that Plaintiff had exhausted all available FMLA time, that Plaintiff's continued absence was not protected under the law, and that AMR was no longer able to hold the Senior Operations Supervisor position open for Plaintiff given that AMR did not know if and when Plaintiff would return to work. (Def.'s 56(a) ¶¶ 35, 36; ECF No. 38-1 at 204.) On May 6, 2019, AMR sent Plaintiff another letter reminding him that AMR provided him with an extended leave of absence under company policy and stating that he needed to return to work, if medically cleared, by May 14, 2019, or risk termination of his employment. (Def.'s 56(a) ¶ 43; ECF No. 38-1 at 206.)

Plaintiff was authorized by his medical provider to return to "full duty" work starting on May 14, 2019, and he accepted AMR's offer to work as a per diem paramedic starting on June 8, 2019. (Def.'s 56(a) ¶¶ 45, 46; ECF No. 38-1 at 208, 210.) Pursuant to the Collective

3

Bargaining Agreement ("CBA") applicable to Plaintiff, he was required to work at least one shift per week as a per diem employee. (Def.'s 56(a) ¶ 51; ECF No. 38-1 at 235.) On September 25, 2019, Plaintiff received a written warning for failing to report to work that day. (ECF No. 38-1 at 213.) Plaintiff repeatedly failed to comply with the minimum shift requirements required by the CBA, and his employment with AMR was terminated on March 13, 2020 as a result. (Def.'s 56(a) ¶¶ 50, 55.)

### B.  Procedural History

On or about December 4, 2020,[2] Plaintiff filed a complaint with the Equal Employment Opportunities Commission, alleging that Defendant engaged in discrimination in violation of the ADA. (Compl. ¶ 40.) He was issued a Right to Sue letter on April 11, 2021, and filed the instant action on July 9, 2021. (*Id*.) AMR moved for summary judgment as to all claims on August 19, 2022. (ECF No. 36.)

## II.  <u>LEGAL STANDARD</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[3] A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v.*

---

[2] Plaintiff's Complaint states that he filed the EEOC complaint on December 4, 20*19*, but the Court assumes, given the timeline of events, that this was a typographical error.

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Id.* The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, if the non-moving party fails to make a sufficient showing on an essential element of her case on which she has the burden of proof and submits "merely colorable evidence," then summary judgment is appropriate. *Anderson* 477 U.S. at 249–50; *Celotex*, 477 U.S. at 322–23. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). There must be evidence on which a jury reasonably could find for the non-moving party. *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

### III.   DISCUSSION

#### A.   Plaintiff's ADA Claim

Plaintiff alleges, *inter alia*, that AMR refused to reasonably accommodate his disability and discriminated against him due to his disability in violation of the ADA. The ADA prohibits employment discrimination by a "covered entity . . . against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Employers of persons with disabilities are required to make reasonable accommodations to the known limitations for otherwise qualified individuals with disabilities and are prohibited from retaliating against an employee engaged in activities protected under the statute. *Id.* §§ 12112(b)(5)(A), 12203(b).

ADA employment discrimination claims are evaluated under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *See Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). Similarly, to establish a *prima facie* claim for failure to accommodate under the ADA, a plaintiff must satisfy the first three factors, but for the fourth factor, he must show by a preponderance of the evidence that his employer refused to make a reasonable accommodation. *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020); *Bost v. Nassau Cnty. Dep't of Social Servs.*, No. 22-2547, 2023 WL 6366053, at *2 (2d Cir. Sept. 29, 2023).

There is no dispute that Defendant is an entity subject to the ADA. Accordingly, the Court shall proceed to the issue of whether Plaintiff is disabled within the meaning of the ADA.

### 1. "Disability" Under the ADA

An individual with a "disability" is defined as any person who (1) has a physical or mental impairment that "substantially limits" one or more "major life activities"; (2) has a "record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). "Disabilities are determined on a case by case basis." *Munck v. New Haven Sav. Bank*, 251 F. Supp. 2d 1078, 1082 (D. Conn. 2003). Plaintiff claims he satisfies the first and third definitions of being a person with a disability because his neck injury substantially limited the major life activities of "working" and "lifting" and because he was regarded as having such an impairment. (ECF No. 45 at 7-9; Compl. ¶ 41.)[4] The Court considers each of these arguments in turn.

#### a. Impairment "Substantially Limits" "Major Life Activity"

To meet the first ADA definition of disability, (1) a plaintiff must show that he suffers from a physical or mental impairment; (2) the plaintiff must identify the activity that is claimed to be impaired and establish that such activity constitutes a "major life" activity; and (3) the plaintiff must show that his physical or mental impairment "substantially limits" the identified "major life activity." *Birnbach v. Americares Found., Inc.*, No. 3:19-CV-01328 (VLB), 2021 WL 4263361, at *9 (D. Conn. Sept. 18, 2021) (citing *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002)). To determine whether a major life activity is substantially limited by an impairment, the Court considers, among other factors, "the nature

---

[4] Defendant contests that Plaintiff is disabled as defined by the ADA. (*See* ECF No. 38 at 12.)

7

and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005).

Generally, short term, temporary restrictions are not "substantially limiting" and do not render a person "disabled" under the ADA. *See De La Rosa v. Potter,* 427 F. App'x 28, 29 (2d Cir. 2011) (temporary back injury not substantially limiting); *Adams v. Citizens Advice Bureau,* 187 F.3d 315, 316–17 (2d Cir. 1999) (temporary neck, back, and knee injury lasting three and one-half months is not a disability within the meaning of the ADA); *Graaf v. North Shore Univ. Hosp.*, 1 F. Supp. 2d 318, 321 (S.D.N.Y. 1998) ("Courts within this circuit and the vast majority of courts elsewhere which have considered the question, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary disabilities are not disabled persons within the meaning of the act."); *Davis v. Bowes*, No. 1:95-CV-4765, 1997 WL 655935, at *15 (S.D.N.Y. Oct. 20, 1997) (plaintiff who suffered back injury resulting in six-month absence from work not disabled under ADA where she recovered fully from the injury).

Here, Plaintiff alleges that after his shoulder injury, "the medical restriction that was preventing him from returning to work was that his doctor did not want him to do any heavy lifting." (Compl. ¶ 25.) He further asserts that "his injury caused [him] to be substantially limited in both the major life activities of 'lifting' and 'working,' thereby establishing that he was, at the time, a disabled person." (ECF No. 45 at 8 (emphasis added).) Plaintiff provides absolutely no medical records, evidence, or other information to support his claim that his neck/shoulder injury caused him to be *substantially* limited in the major life activities of lifting and working. *See Birnbach*, 2021 WL 4263361, at *11. Rather, his own testimony and the

8

record contradict Plaintiff's claim to substantial impairment and, instead demonstrate that his neck/shoulder injuries were only temporary conditions lasting for less than six months that did not affect his normal job duties once he returned from his leaves of absences.[5] *See* Pl. Dep., ECF No. 45-2, at 25:2-5 ("Q: And then at some point, did your condition improve, allowing you to come back? A: It did, and I went back to work for approximately two weeks or so."); *id.* at 26:7-15 ("Q: [D]o you recall what you did at work during those 10 days? A: It was back to my regular duties, scheduling and unit hour utilization, disciplinary stuff. My regular job. Q: Were you comfortable returning to work at that point? I mean, did you feel capable of returning to work? A: Yes."); Pl. Dep., ECF No. 38-1, at 47:3-10 ("Q: So did you see [Dr. Strugar] for your shoulder issue after the fall? A: […] I did see Dr. Strugar. And he wasn't concerned very much about my neck. Q: After the fall, you mean? A: Correct."); *id.* at 58:19-25 ("Q: Let's take [] May 2019 when you received that letter. Were [] you receiving medical treatment at that point? A: I don't remember what date I stopped seeing the [] shoulder surgeon, but [] it's fair to say it's possible."); *id.* at 59:9-16 ("Q: So taking [] a closer look here at this [May 5, 2019] medical note, it says, 'He'—meaning you—'does feel capable to return to work.' Do you agree with that assessment? A: Yes. Q: And did your doctor agree that you were capable to return? A: Yes."). Therefore, Plaintiff fails to satisfy the first definition of "disability" under the ADA.

Not only does Plaintiff fail to provide any evidence supporting his claim that his physical impairment substantially limited his ability to lift and work, "an employee alleging a

---

[5] In fact, Plaintiff's own language, that he was disabled "***at the time***," suggests that Plaintiff himself believes his injuries were temporary.

9

substantial limitation in the major life activity of working must show that the limitation affects the ability to perform a *class . . . or broad range of jobs*." *Woolf*, 949 F.3d at 94 (alteration in original). Instead, Plaintiff solely claims that his "lifting restrictions . . . prevented him from otherwise returning to work[.]" (ECF No. 45 at 8.) Because Plaintiff does not attempt to show that his work-induced impairment substantially limited his ability to work in a class or broad range of jobs, no reasonable factfinder could conclude that Plaintiff has a "disability" within the meaning of the ADA.

### b. "Regarded As" Having an Impairment

Pursuant to the ADA, a plaintiff will be regarded as having a qualifying impairment "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Plaintiff, for the first time in his opposition, claims that he is an individual with a disability because his "employer . . . regarded [him] as a person with a disability" and "had knowledge of the plaintiff's disability." (ECF No. 45 at 8-9.) Plaintiff raises no such theory of disability in his Complaint. "It is well settled that a litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment." *Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 106 (S.D.N.Y. 2016); *see also Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) ("The district court did not err in disregarding allegations Avillan raised for the first time in response to Potter's summary judgment motion."); *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (holding that "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint"). Accordingly, the

Court declines to address Plaintiff's assertion that he meets the ADA's third definition of "disability."[6]

No reasonable factfinder can conclude that Plaintiff has established a *prima facie* case of discrimination under the ADA because he has not established that he was disabled as defined by the ADA. AMR is therefore entitled to summary judgment on Plaintiff's ADA claim.

### B. Plaintiff's FMLA Interference Claim

The Court next grants summary judgment in favor of AMR on Plaintiff's claim that AMR interfered with the exercise of his rights under the FMLA.[7]

It is unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" rights under the FMLA. 29 U.S.C. § 2615(a)(1); *see* 29 C.F.R. § 825.220(a)(1) ("The FMLA prohibits interference with an employee's rights under the law, and with legal proceedings or inquiries relating to an employee's rights."). Thus, "an employee may seek relief when [his] employer has prevented or otherwise impeded [his] ability to exercise rights under the FMLA." *Peterson v. Town of Waterford*, No. 3:21-CV-332 (SVN),

---

[6] In any event, the ADA Amendments Act of 2008 (the "ADAAA") clarifies that no failure to accommodate claim can be made, as a matter of law, for an individual who is "regarded as" disabled, rather than who is actually disabled. In other words, the "regarded as" theory of disability is no longer actionable in the context of a failure to accommodate claim. *See* 42 U.S.C. § 12201(h) ("A covered entity under subchapter I, a public entity under subchapter II, and any person who owns, leases (or leases to), or operates a place of public accommodation under subchapter III, need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of this title solely under subparagraph (C) of such section."); *see also Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 n.7 (7th Cir. 2011) ("[T]he ADAAA clarified that an individual 'regarded as' disabled (as opposed to actually disabled) is not entitled to a 'reasonable accommodation.'"). Consequently, Plaintiff's failure to accommodate claim fails to the extent Plaintiff alleges he was disabled under the "regarded as" theory.

[7] Plaintiff does not clearly state whether he is asserting an interference or retaliation claim under the FMLA in his Complaint, but he clarifies that it is the former in his opposition to AMR's motion for summary judgment. (*See* ECF No. 45 at 15.)

11

2023 WL 2742343, at *12 (D. Conn. Mar. 31, 2023). To prevail on an interference claim, a plaintiff must establish: (1) that he was an eligible employee under the FMLA; (2) that the defendant is an employer for purposes of the FMLA; (3) that he was entitled to leave under the FMLA; (4) that he gave notice to the defendant of his intention to take leave; and (5) that he was denied FMLA benefits to which he was entitled. *Graziadio v. Culinary Institute of America*, 817 F.3d 415, 424 (2d Cir. 2016).

Interference with the exercise of FMLA rights may include, for example, "refusing to authorize FMLA leave" and "discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). Moreover, an employer's failure to "reinstate an employee to a prior position or its equivalent following FMLA leave" can constitute such interference. *Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 69 (D. Conn. 2014). An employer may be held liable for an interference claim "even if [it] never subjectively intended to interfere with [the] plaintiff's FMLA rights." *Blackett v. Whole Foods Mkt. Grp., Inc.*, No. 3:14-CV-01896 (JAM), 2017 WL 1138126, at *6 (D. Conn. Mar. 27, 2017).

As a preliminary matter, Plaintiff does not contend that AMR denied any FMLA leave he requested. Indeed, Plaintiff expressly concedes that he received all the leave to which he was entitled when he took leave twice between 2018-2019. (Pl.'s 56(a) ¶¶ 25, 34.) Therefore, to prevail on his interference claim, Plaintiff must show that AMR interfered with his FMLA rights in some manner other than by denying him leave. *Wanamaker*, 11 F. Supp at 69. Here, Plaintiff claims that AMR interfered with the exercise of his FMLA rights by "refus[ing] to reinstate the plaintiff when he sought to return to his position as Senior Operations Supervisor." (ECF No. 45 at 16; *see also* Compl. ¶ 41.) In response, AMR contends that Plaintiff's interference claim fails because "he was not on FMLA leave when th[e] decision [not to hold

12

open his position] was made, he was provided all leave to which he was entitled (plus more), and his employment continued." (ECF No. 38 at 21.) The Court agrees with Defendant.

A claim for interference on the basis of a failure to reinstate is "not cognizable as a violation of FMLA, where [the plaintiff] remained on leave beyond the expiration of his FMLA leave." *Ridgeway v. Royal Bank of Scotland Grp.*, No. 3:11-CV-976 (VLB), 2012 WL 1033532, at *10 (D. Conn. Mar. 27, 2012); *see also Sabatino v. Flik Int'l Corp.*, 286 F. Supp. 2d 327, 336-37 (S.D.N.Y. 2003) (finding that where the plaintiff did not return to work at the end of her FMLA leave period, defendants had no obligation to return the plaintiff to her former job, let alone to any other job); *Dogmanits v. Capital Blue Cross,* 413 F. Supp. 2d 452, 462 (E.D. Pa. 2005) (holding that employees who exhaust the 12 weeks of leave provided by the FMLA stand to lose their entitlement to job restoration even if their employers provide additional, non-FMLA leave).

Plaintiff admits, and the record shows, that when his FMLA leave expired on February 15, 2019, which he received written notice of on February 22, 2019, he received and took extended leave under AMR's policies. (ECF No. 38-1 at 52:5-8, 57:5-22, 204, 206; Pl.'s 56(a) ¶¶ 34, 35, 43, 45.) Furthermore, there is no evidence that AMR affirmatively represented to him that this extended leave was FMLA leave. *See Sjoblom v. Jersey Shore Med. Ctr.,* No. 05-CV-1042, 2006 WL 1228709, at *4 (D.N.J. May 5, 2006) (dismissing FMLA claims where the employer provided actual notice as to when the FMLA leave expired). Plaintiff's right to reinstatement under the FMLA expired when his FMLA leave expired. *Wanamaker*, 11 F. Supp. 3d at 71. Thus, no reasonable factfinder can conclude that any alleged misconduct by AMR after February 15, 2019, the date Plaintiff's FMLA leave expired, constitutes

interference with Plaintiff's right to reinstatement. AMR is entitled to summary judgment on Plaintiff's FMLA interference claim.

## IV. CONCLUSION

For the foregoing reasons, AMR's Motion for Summary Judgment (ECF No. 36) is **GRANTED**. Judgment is entered in the defendant's favor. As there are no remaining claims, the Clerk is directed to close this case.

**SO ORDERED.**

Hartford, Connecticut
February 23, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge